In support of his title, the plaintiff introduced a grant from the State dated in 1802, on a survey made some time before that date, to one *Page 590 
Samuel Houston, Sen., calling for fifty acres of land, described as follows: "Beginning on a stake, the upper end of the island, thence south 35 degrees east fifty-three poles to a stake, the lower end of the island; thence east 125 poles to a post oak; thence north 45 poles to a black oak; thence west 20 poles to Samuel Houston's old corner; thence with said Houston's line west, in all 154 poles, to the beginning, including two small islands in said river," and describing said land as lying on the Catawba River.
Plaintiff then introduced mesne conveyances from the said Samuel Houston down to himself.
The plaintiff then introduced one Clegg, a surveyor, (who had surveyed the land in the grant, and also the adjacent land claimed by the defendant) (see plot post,) who testified that he commenced his survey at the upper end of island No. 2, (there being two islands opposite the land described in the grant, lying nearly parallel with each other and the bank of the river,) the one nearest the bank being designated as island No. 1, and the one farthest from the bank as island No. 2; that he ran to the lower end of island No. 2; that the courses corresponded precisely with the courses of the grant; that the distance was (792) greater than called for — this line was run on the western margin of said island. He then went to the upper end of island No. 1, and run down its western margin to the lower end of the same; that the course of this line varies about fourteen degrees from the call of the grant, and the distance was greater.
He then went to the upper end of island No. 1, and run down till he came opposite the upper end of island No. 2, a distance of twenty poles, and then crossed over to island No. 2, and run along its western edge to its lower end; that the course of this line corresponded precisely with the call of the grant, but the distance was greater.
That he then commenced at the lower end of island No. 2, and run to a post oak, on the main land, which was admitted by the plaintiff and defendant to be the third corner called for in the Houston grant; that the course of this line varied three degrees from the call of the grant, and the distance was greater.
The course from the lower end of island No. 1, also varied three degrees, though in the opposite direction.
He then run to the black oak north, and that the line corresponded precisely with the call of the grant, but the distance was greater. From the black oak, he run with the old marked line, west, to the upper end of island No. 1.
The plaintiff then introduced one R. C. Plott, who testified that he had heard old man George Campbell, now dead, say that the lower end of Island No. 2, was the Houston corner, and one Jacob Parker, who *Page 591 
testified that Mrs. Campbell, under whom the defendants claim, had told him that her beginning corner was at the lower end of Island No. 2, (being then in sight of said point and pointing to it.) The defendant introduced a grant to the heirs of one Kyle, dated in the year 1816, and showed mesne conveyances from the heirs of Kyle to themselves. Said grant called for "commencing on a stake, the lower end of Houston island, then, with his line, past his corner," etc. They also (793) introduced a surveyor, who stated that he commenced at the post oak, the admitted third corner of the Houston grant, and ran along an old marked line to a white oak, in the river bank, which was marked as fore and aft and across to a point about 5 poles above the lower end of Island No. 1; that he blocked the white oak and post oak corners and four other trees along said line, including the post oak corner; that the white oak, post oak and two other trees corresponded in age with the Houston survey, and one with the age of the Kyle survey. They also introduced one Jno. Davidson, a surveyor, and several other persons, who testified that they were present between 30 and 40 years ago, when the surveyor was surveying other land in the neighborhood, and a dispute arose between Samuel Houston, Jr., a son of the grantee in the Houston grant, and one Crawford, as to whether if, the second line of the Houston grant was run out, according to its call, it would come out at the post oak corner or not, and to settle it, Samuel Houston, Jr., took the surveyor to the white oak, marked as fore and aft, at the bank of the river, and set his compass for him and sighted to the lower end of Island No. 1, and told him to run from them and by the post oak. The surveyor run the line according to the sight granted him, and came out above the post oak (4 or 5 poles.) Houston following the old line and calling to the surveyor, Davidson, as he went along, that he was leaving the line, said Samuel Houston, Sr., had formerly been one of the owners of this land; that he said nothing about the lower end of Island No. 1, being the corner, but set the compass as above stated.
It was in evidence that the ground between the post oak corner and the river was broken and wooded, so that the river could not be seen from there. That the distance from the white oak on the river bank to the lower end of Island No. 2, was about 100 yards. that the distance from the said white oak to the line running from the lower end of Island No. 2 to the post oak, (the greatest width of the (794) disputed land on the shore,) was 110 yards.
There was other evidence tending to show that the marked line from the white oak to the post oak, was the line surveyed and marked out for the Houston grant, and that it had always been recognized as the true line until 1862 or 1863. *Page 592 
It was in evidence that there is now a corner of an old field of about three-fourths of an acre, extending from the Kyle tract in the disputed land; and several of the children of Elizabeth Campbell, under whom the defendants claim, testified that the same had been cleared for forty or fifty years, and that their mother and themselves had cultivated said field, including the part in the disputed land, for more than twenty years previous to A.D. 1860, and that they had cut fire wood, rail timber, boards and shingles off the remainder of the disputed land which lays between the field and the marked line; that the old line of marked trees, from the white oak to the post oak, had always been recognized as the line between the Kyle lands and the Houston lands. That one David Clark, under whom the plaintiff claimed, when he owned the land had asked permission of Elizabeth Campbell to set his fence a few feet below the white oak, on the disputed land, to get a bluff on the river, and she had granted it. It was further in evidence, that when the present defendants purchased from Elizabeth Campbell, they went after the plaintiff to draw the writings for them, and that on returning with them to the house of Elizabeth Campbell he had put his hand on and pointed out to them the white oak on the river bank as a line tree between him and Mrs. Campbell.
It was in evidence, on the part of the plaintiff, that the cultivation of the field, which ran upon the disputed land, was suspended several years before A.D. 1860, and that long before that the fence had been drawn in, leaving out that part that was in the disputed land, and the plaintiff himself testified that he had not known of any cultivation (795) of said field for twenty years or more; that he had known the disputed lands thirty-five or forty years, and had never known any one to cut timber or wood of any kind upon it in that time.
Plaintiff further testified that he had always thought that the line from the white oak to the post oak, as marked, was the line between him and the Campbells, until he found the Houston grant, in 1872, though he always thought that island No. 2, the lower end, was his corner. That his deeds all commence at the post oak, and run around the other way, he not having ever seen the Houston grant until by accident he found it in the year A.D. 1872, after the present defendants had purchased.
The court, after rehearsing the evidence, instructed the jury that they must find all the disputed facts, from the testimony, and apply them to the law as given them by the court. And in doing this, it was proper that they should take in consideration the arguments and theories of the counsel on both sides. That it was agreed by both sides that the post oak was the third corner called for in the grant. But the parties disputed as to where the second corner called for in the grant was. *Page 593 
That the plaintiff contended it was at the lower end of island No. 2, and the defendants contended that it was at the lower end of island No. 1, and that was a question for them to determine. That the court instructed them that it was at one or other of these points. And, as a matter of convenience, they might consider that question first. And if they should find that it was at the lower end of island No. 1, they need not go any further with their enquiries, as a line ran from that point to the post oak would not cover any land in possession of the defendants, plaintiff would not be entitled to recover, and their verdict should be for the defendants.
But if they should not find that the lower end of Island No. 1 was the second corner called for in the grant, and that the lower end of Island No. 2 was, the plaintiff's line would be a true and direct line, from that point to the Post Oak, nothing else appearing, (796) and plaintiff would be entitled to recover, and their verdict should be for plaintiff. But defendants further contend that if you find that the lower end of Island No. 2 is the second corner called for in the grant, that they have shown a line of marked trees extending from the Post Oak corner west to the river, and that the same was run and marked by the surveyor in making the survey for the Houston grant, and that that line has always been known and recognized as the dividing line between the respective owners until about 1872, and that said marked line is the true line, although not a direct line from the lower end of Island No. 2 to the post oak corner. And the court instructed the jury that if they should so find the facts, that as this was the location of a grant from the State, that said marked line would be the true line, and plaintiff would not be entitled to recover and their verdict should be for the defendant. But defendants also further contend that if you should find that the lower end of Island No. 2 was the second corner called for in the grant and should not find the marked line from the post oak to the white oak was the true line under the instructions as given you, that they have shown a sufficient adverse possession to give them title and to defeat the plaintiff's right to recover. And upon this the court instructed the jury, that as it was shown that this land had been granted by the State to either Houston or Kyles, that if they found as a fact that the defendants and those under whom they claim had had an actual adverse possession of the land in dispute for twenty years, that this would defeat the plaintiff's right to recover the land so held in possession; and if they further found that those in possession were claiming up to the marked line from the post oak to the white oak, the law would presume possession up to that line and plaintiff would not be entitled to recover, although he might originally have had the title to the same. That this possession must (797) *Page 594 
have been an actual possession of a part of the land in dispute — a possession of other land under the Kyles grant not in dispute would not do, neither would the occasional cutting board timber, etc., do. But it must be such a possession as farmers in that neighborhood usually have of land they cultivate. Plaintiffs excepted:
1st. That his Honor left it as a matter of fact to the jury to say whether the second corner of the land, included in the Houston grant, was at the lower end of Island No. 1, or lower end of Island No. 2, when he ought to have told them, as a matter of law, that it was at the lower end of Island No. 2.
(798)
[EDITORS' NOTE: THE MAP IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 74 N.C. 594.] *Page 595 
2d. That his Honor told the jury, in effect, that if the line from the white oak to the post oak was the line actually run for the location of the Houston grant, it would be the true line, though seemingly located there by mistake, and differing from the actual call of said grant.
3d. That his Honor told the jury that as the defendants claim up to a known marked tree (the line from white oak to the post oak) if they had actual possession of a part of the land between the line from the white oak to the post oak, and true line from the lower end of Island No. 2, to the post oak, (supposing that to be the true line) the law would presume this possession to be a possession of all the land between the two lines aforesaid, sufficient if long enough to bar plaintiffs' claim to all the land between said lines.
Verdict and judgment for defendants.
Motion for a new trial. Motion disallowed. Appeal by plaintiff.
The statement of the case does not set out with distinctness the locus in quo, but we learn from it and the plot and the statement of counsel at the bar, that it composes a slip of dry land lying between a direct line from the lower end of Island No. 2 to the post oak corner, and a line of marked trees from that corner (799) to a white oak on the bank of the river, marked as a "fore and aft;" and also a parcel of land covered by water. In regard to the dry land, there was evidence of a long continued possession by those under whom defendant derives title, claiming up to the white oak and marked line to the post oak. There was conflicting evidence as to how long this possession had been abandoned, to which his Honor seems not to have called the attention of the jury; but supposing, as to this part of the locus in quo, there was evidence to be left to the jury; in regard to the parcel covered by water, there was no evidence whatever of any possession or of any definite line up to which claim was made. It may have been from the white oak down the river bank, which was the extent of the possession, or from the white oak to the lower end of Island No. 2; or to the island, by an extension of a line from the post oak to the white oak, or from the white oak to the lower end of Island No. 1, which the case states was the point claimed by the defendant.
His Honor erred in allowing the jury to find for the defendant in respect to this part of the locus in quo. There will be a venire de novo. As the case goes back, it may be well to observe that his Honor is very indefinite on the question of boundary, which is the main purpose of *Page 596 
the action, and for this the plaintiff has a right to complain, as well as for error above referred to. The object is to locate the Houston grant — it begins at a stake at the upper end of the island, thence, etc., to a stake at the lower end of the island, thence, "including two small islands."
The difficulty arises out of the fact, that the grant does not designate which of the two islands is meant by the words, a stake at the upper end, and a stake at the lower end of "the island." This is the governing fact in the case, and ought to have been distinctly left to the jury, with instructions to consider all of the evidence and the surroundings (800) of the case, including the marked line trees and corners, and the plot annexed to the grant, the tradition of old persons, the land and the nature of the river; were the islands permanent or liable to change by washing away at one place and gaining at another and other like matters.
His Honor was at liberty, by way of illustration and to aid the jury, to say the grant includes two islands. If you adopt No. 1, how can you include both islands? On the other hand, there are certain marked line trees that cannot be reconciled with a corner at the lower end of No. 2. How can you adopt No. 2? and he ought then to have added: Can a solution of this difficulty be found in the supposition that since 1790, the upper part of No. 2 has washed off and there has been an accretion at the lower end? If the jury find that No. 1 is the island meant, the verdict should be in favor of the defendant. If the jury find that No. 2 is the island meant, then the court instructs them: The beginning corner of the grant is at a point which was the upper end of the island at the date of the survey, 1790, and the second corner is at a point which was the lower end of the island at that date, and the line must be run from the second corner, wherever the jury may fix it, directly to the post oak, an agreed corner.
PER CURIAM. Venire de novo.
Cited: Graybeal v. Powers, 76 N.C. 70; Clarke v. Wagner, 76 N.C. 463;Clarke v. Wagner, 77 N.C. 368. *Page 597